1

2                          **UNITED STATES DISTRICT COURT**

3                          EASTERN DISTRICT OF CALIFORNIA

4

5   JAELYN NICOLE NICHOLS,                    Case No. 1:24-cv-00217-SKO

6                Plaintiff,

7        v.                                   ORDER ON PLAINTIFF'S SOCIAL

8   CAROLYN COLVIN,                           SECURITY COMPLAINT

9   Acting Commissioner of Social Security,[1]   (Doc. 1)

10               Defendant.

11                    **I.      INTRODUCTION**

12         On February 17, 2024, Plaintiff Jaelyn Nicole Nichols ("Plaintiff") filed a complaint under

13  42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social

14  Security (the "Commissioner" or "Defendant") denying her application for Supplemental

15  Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The

16  matter is currently before the Court on the parties' briefs, which were submitted, without oral

17  argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

18                    **II.      FACTUAL BACKGROUND**

19         On August 1, 2021, Plaintiff filed an application for SSI payments, alleging that she became

20  disabled on February 10, 2010, due to asthma, unspecified headache disorder, bipolar disorder,

21  anxiety disorder, learning disorder, and attention deficit hyperactivity disorder. (Administrative

22  Record ("AR") 21, 23.)

23         Plaintiff was born on July 28, 2003, and was 18 years old on the application date. (AR 21,

24  254.)   Plaintiff had been enrolled in a Career Technical Education Program with a focus on

25  cosmetology, (AR 496), from which she ultimately graduated. (AR 35.) Plaintiff is now enrolled

26  _____

27  [1] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

28  [2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 14.)

in cosmetology school.  (AR 37).

**A.     Relevant Evidence**[3]

     **1.     Joseph Alimasuya, M.D.**

     Beginning in January 2014, Plaintiff saw Joseph Alimasuya, M.D. for psychiatric treatment.  (AR 798.)  Dr. Alimasuya formally diagnosed Plaintiff with Bipolar and Related Disorder, ADHS (predominantly inattentive presentation), and Social Anxiety Disorder (Social Phobia), and over the course of several years Dr. Alimasuya prescribed Plaintiff various medications associated with these conditions, including (anti-psychotics, anti-convulsants, stimulants).  (AR 768–69, 770, 792, 794–97.)  Plaintiff is currently prescribed Lamictal, Vyvanse, Propranolol, Vitamin D, and Quetiapine.  (AR 771.)  Dr. Alimasuya's notes also indicate that Plaintiff has a history of mood liability, anxiety, and neurodevelopmental symptoms.  (AR 768.)

     In a treatment note from September 30, 2021, Dr. Alimasuya recorded that Plaintiff rated her stability as "a 9.5 out of 10."  (AR 768.)  He also observed that she was minimally communicative and defensive, had constricted affect, presented as anxious, and had a short attention span.  (AR 769.)  However, he also noted that she was calm, attentive, presented with normal speech and intact memory, was fully oriented with cognitive functioning within the normal range, had intact and logical associations and judgment, and did not present signs of depression or mood elevation.  (*Id.*)

     In notes for a subsequent appointment on April 14, 2022, Dr. Alimasuya recorded observations that were mostly consistent with the September 2021 visit but noted several differences including that Plaintiff rated herself a "6 out of 10," (AR 773), "displayed uncooperative behavior during the examination" and that she presented as "glum, attentive, minimally communicative," with speech that was "scanty, and soft."  (AR 774.)

     On September 11, 2022, Dr. Alimasuya made very similar observations as those he noted during her appointment from September of the previous year.  (AR 779.)

---

[3] Because Plaintiff's assertion of error is limited to the ALJ's finding that Plaintiff's mental impairments were not severe—meaning Plaintiff has waived any challenge to the ALJ's findings as to any physical impairments, *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009)—only evidence relevant to that argument is discussed below.  The Court has also omitted discussion of facts not relevant to its holding.

### 2.    Special Education Evaluations

Plaintiff has a long history—beginning in third grade—of qualifying for accommodations through an Individualized Education Program (IEP).  (AR 417, 440.)  For high school, Plaintiff attended Duncan Polytechnical High School, a Career and Technical Education (CTE) magnet school.  (AR 509.)  During her freshman year there, a 2018 report documented that Plaintiff had "struggled," on the basis of which she was granted several accommodations, including extra time for testing and completing assignments.  (AR 445, 454.)

In 2020, her senior year, Plaintiff underwent a triennial special education assessment, which included formal testing ("Cognitive Functioning / Processing Assessments"), conducted by school psychologist Elizabeth Nixon, M.A.  (AR 524, 542.)  The triennial assessment report reflected the following findings: (1) a "clinically significant" finding as to Plaintiff's attention (AR 531); (2) that executive functioning was a "weakness for [Plaintiff]," (AR 532); (3) that fluid reasoning was a "weakness for [Plaintiff]," (AR 533); and (4) that listening comprehension was a "significant weakness for [Plaintiff]," (AR 534.)  The results of all other cognitive functioning and processing assessments—including attention, auditory processing, fine motor, working memory, orthographic processing, phonological processing, and visual-spatial processing—were either mixed or in range of average.  (AR 531–35.)

As a result of the 2020 triennial assessment, the IEP team determined that Plaintiff remained eligible for special education services based on her "other health impairments"—specifically her diagnosis of ADHD and demonstrated "limited alertness with respect to the educational environment."  (AR 540, *see also* 542.)  The report also included a recommendation that Plaintiff be granted accommodations.  (AR 542.)

### B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on December 29, 2021, and again on reconsideration on June 9, 2022.  (AR 53–66, 67–80.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 102.)  On December 7, 2022, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 34–50.)  A vocational expert ("VE") also testified at the hearing.  (AR 50–52.)

1    Among other things, Plaintiff's testimony reflected that (1) she has a driver's license—

2    though it took her ten attempts to pass the test, (2) it was taking her longer to complete cosmetology

3    school, and (3) she was receiving what amounts to some form of accommodation in her current

4    cosmetology program.  (AR 25, 45.)

5    **C.      The ALJ's Decision**

6    In a decision dated December 14, 2023, the ALJ found that Plaintiff was not disabled, as

7    defined by the Act.  (AR 21–27.)  The ALJ conducted the five-step disability analysis set forth in

8    20 C.F.R. § 416.920—stopping at step two.  (AR 23–27.)  The ALJ decided that Plaintiff had not

9    engaged in substantial gainful activity since August 1, 2021, the application date (Step One).  (AR

10   23.)  The ALJ stopped the analysis after finding that the Plaintiff had not established a severe

11   impairment. In making a determination of non-severity at Step Two, the ALJ considered the

12   "Paragraph B" criteria[4] and concluded that the evidence failed to establish the presence of a severe

13   mental impairment.  (AR 25.)

14   The ALJ noted that Plaintiff had been diagnosed with ADHD, has a "history of childhood

15   learning disorder" and acknowledged that Plaintiff alleged "difficulty with memory, concentration,

16   understanding, following instructions, and completing tasks."  (AR 24–25.)  The ALJ also

17   discussed Plaintiff's education records and history of being granted accommodations.  (*Id.*)  The

18   ALJ nonetheless found that "[t]he record does not show the claimant to have more than a mild

19   limitation in any of these areas."  (AR 25 (citing 20 C.F.R. § 416.920a(c)(4)).)  Further, the ALJ

20   determined that the record did not reflect more than a "minimal limitation" in Plaintiff's ability to

21   perform basic work activities.  (*Id.*)  Therefore, the ALJ concluded that "[b]ecause [Plaintiff's]

22   medically determinable mental impairments cause no more than 'mild' limitation in any of the first

23   three functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal

24   limitation in the claimant's ability to do basic work activities,[5] they are nonsevere."  (AR 25 (citing

25   _____

26   [4] The Social Security regulations establish four functional areas, sometimes referred to as "Paragraph B" criteria, that are to be considered in evaluating the severity of limitations associated with *mental* impairments: "understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and

27   adapting oneself."  20 C.F.R. § 416.920a(c)(4).
     [5] "[B]asic work activities are the abilities and aptitudes necessary to do most jobs."  SSR 85–28, 1985 WL 56856, at *3.  Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting,

28   pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3)

1  20 C.F.R. § 416.920a(d)(1)).)

2       Plaintiff sought review of this decision before the Appeals Council, which denied review

3  on December 14, 2023.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the

4  Commissioner.  20 C.F.R. § 416.1481.

5                        **III.      LEGAL STANDARD**

6  **A.      Applicable Law**

7       An individual is considered "disabled" for purposes of disability benefits if he or she is

8  unable "to engage in any substantial gainful activity by reason of any medically determinable

9  physical or mental impairment which can be expected to result in death or which has lasted or can

10  be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

11  However, "[a]n individual shall be determined to be under a disability only if [her] physical or

12  mental impairment or impairments are of such severity that [s]he is not only unable to do [her]

13  previous work but cannot, considering [her] age, education, and work experience, engage in any

14  other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

15       "In determining whether an individual's physical or mental impairment or impairments are

16  of a sufficient medical severity that such impairment or impairments could be the basis of eligibility

17  [for disability benefits], the Commissioner" is required to "consider the combined effect of all of

18  the individual's impairments without regard to whether any such impairment, if considered

19  separately, would be of such severity."  *Id.* § 423(d)(2)(B).  For purposes of this determination, "a

20  'physical or mental impairment' is an impairment that results from anatomical, physiological, or

21  psychological abnormalities which are demonstrable by medically acceptable clinical and

22  laboratory diagnostic techniques."  *Id.* § 423(d)(3).

23       "The Social Security Regulations set out a five-step sequential process for determining

24  whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*,

25  180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  "The claimant carries the initial

26  burden of proving a disability in steps one through four of the analysis."  *Burch v. Barnhart*, 400

27
28  "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922(b).

F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  The

Ninth Circuit provided the following description of the sequential evaluation analysis, as relevant

here:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.

*Id.*; *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process");

42 U.S.C. § 416.920(a)(4) (same).  "If a claimant is found to be 'disabled' or 'not disabled' at any

step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098

(citing 20 C.F.R. § 404.1520).

**B.    Scope of Review**

   "This court may set aside the Commissioner's denial of disability insurance benefits [only]

when the ALJ's findings are based on legal error or are not supported by substantial evidence in

the record as a whole."  *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence is

defined as being more than a mere scintilla, but less than a preponderance."  *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).  "Put another way,

substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

   "This is a highly deferential standard of review."  *Valentine v. Comm'r of Soc. Sec. Admin.*,

574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence

is susceptible to more than one rational interpretation."  *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If

the evidence is susceptible to more than one rational interpretation, the court may not substitute its

judgment for that of the Commissioner." (citations omitted)).

   Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole,

weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

## IV.    DISCUSSION

Plaintiff's sole assertion of error is that the ALJ erred in finding at Step Two that Plaintiff's mental impairments were not severe.  (*See* Doc. 18 at 6–11; Doc. 23 at 1–3.)  The Court agrees and will remand the case for further proceedings on that basis.

**A.    The ALJ Committed Harmful Error at Step Two**

**1.    Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on [their] ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and Social Security Ruling ("SSR") 86–8).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id.* at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)).  *See also* 20 C.F.R. §§ 416.920(c), 416.921(a).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28).  Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when their conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept."  SSR 85–28.  "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect

1    of an impairment or combination of impairments on the individual's ability to do basic work

2    activities, the sequential evaluation should not end with the not severe evaluation step.'"  *Webb*,

3    433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

4        Ultimately, "[t]he severity regulation increases the efficiency and reliability of the

5    evaluation process by identifying at an early stage those claimants whose medical impairments are

6    so slight that it is unlikely they would be found to be disabled even if their age, education, and

7    experience were taken into account."  *Yuckert*, 482 U.S. at 153.  In other words, "the step-two

8    inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290

9    (citing *Yuckert*, 482 U.S. at 153–54).  Nonetheless, "[t]he plaintiff has the burden of establishing

10   the severity of the impairment."  *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014

11   WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant

12   carries the initial burden of proving a disability in steps one through four of the analysis.") (citing

13   *Swenson*, 876 F.2d at 687)).

14       **2.    Analysis**

15       At step two, the ALJ noted Plaintiff had "medically determinable mental impairments."

16   (AR 23.)  The ALJ found those impairments were not severe because they caused no more than a

17   "mild" limitation in the four functional areas of (1) understanding, remembering or applying

18   information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4)

19   adapting or managing oneself.  (AR 23–27.)

20       Viewing the record as a whole, the medical evidence in this case does not "clearly establish"

21   that Plaintiff lacks a medically severe mental impairment.  *Webb*, 433 F.3d at 687.  In concluding

22   that Plaintiff's mental impairments were nonsevere, the ALJ improperly (1) failed to explain why

23   "significant probative evidence was rejected"—specifically with regard to evidence relating to the

24   Cognitive Functioning / Processing Assessments, *see Vincent on Behalf of Vincent v. Heckler*, 739

25   F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981))—and

26   (2) improperly selectively highlighted those portions of Plaintiff's records that supported the ALJ's

27   conclusion that the impairments were nonsevere, while downplaying or omitting evidence to the

28   contrary, *see Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (An ALJ may not "cherry

1    pick" from a record to support the conclusion, but rather must account for the context of the whole

2    record.); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power

3    of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt

4    to justify it by ignoring competent evidence in the record that suggests an opposite result.). (*See*

5    Doc. 18 at 8–10.)

6         While Plaintiff is not a minor,[6] courts have determined that "like with determinations for

7    older adolescents, records from special education school programs can be relevant to

8    determinations for young adults." *Kristy M. P.*, No. 19-CV-00749-TSH, 2020 WL 5760476, at *9

9    (N.D. Cal. Sept. 27, 2020).  Indeed, the agency itself has issued a policy document setting forth

10   that "[b]ecause '[t]he abilities, skills, and behaviors that young adults use to do basic work activities

11   are the same as those that older adolescents use for age-appropriate activities,' the evidence an ALJ

12   considers in making a disability determination for a young adult 'is generally the same as, or similar

13   to,' evidence an ALJ considers in making determinations for older adolescents." *See id.* (quoting

14   SSR 11-2p).  In light of that policy document, the Court is convinced that the results of the

15   Cognitive Functioning / Processing Assessment—which showed at least one clinically significant

16   result as to Plaintiff's attention and involved findings of weakness as to Plaintiff's executive

17   functioning, fluid reasoning, long-term recall, and listening comprehension (AR 531–35)—were

18   significant and probative to the ALJ's Paragraph B analysis.  It was, therefore, error for the ALJ to

19   fail to consider the formal testing evidence. *See Vincent*, 739 F.2d at 1395.

20        In addition to ignoring significant probative evidence, the ALJ cherrypicked evidence

21   tending to support his conclusion while ignoring evidence that would tend to undermine his

22   conclusion.  For example, while the ALJ observed that the Plaintiff obtained a driver's license, he

23   failed to account for the fact that it took Plaintiff ten attempts before she was able to pass the

24

25   [6] The Court observes that were Plaintiff still a minor, the ALJ would have been obligated by regulation to consider
     school records including "any reports that the school may have that show the results of formal testing," 20 C.F.R.

26   § 416.924a(a)(2)(iii); *see also id.* § 416.924a(b)(7)(iii).  Moreover, medical evidence, for the purposes of evaluating
     disability for children, includes "formal testing that provides information about your development or functioning in

27   terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents." *Id.* § 416.924a(a)(1)(i);
     *but see* 20 C.F.R. § 404.1502 (noting that a licensed or certified school psychologist is an "[a]cceptable medical source"

28   for the purposes of assessing "impairments of intellectual disability, learning disabilities, and borderline intellectual
     functioning only.").

driver's test.  (*Compare* AR 25, *with* AR 45). Also, while the ALJ also observed that the Plaintiff was enrolled in cosmetology school, he did not explicitly consider that Plaintiff receives accommodations as a part of that program.  (*Compare* AR 25, *with* AR 46–47).  Finally, while the ALJ took into account some "mood disturbances" and "uncooperative" behavior with Dr. Alimasuya in April 2022, he did not address the treatment records from September 2021, which included findings that Plaintiff was minimally communicative and defensive, had constricted affect, presented as anxious, and had a short attention span.  (AR 769, *see also* AR 779.)  This selective

While Plaintiff may not "succeed in proving that [she] is disabled," the ALJ "lacked substantial evidence to find that the medical evidence clearly established [plaintiff's] lack of" a medically severe mental impairment.  *Webb*, 433 F.3d at 688.  Accordingly, the ALJ's Step Two finding cannot stand.  And although courts "may not reverse an ALJ's decision on account of a harmless error," *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017), harmless error only "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  Because the ALJ ended his evaluation of Plaintiff's claim at step two, his error at step two is *de facto* harmful.  *See Burch*, 400 F.3d at 682; *Nunes v. Saul*, No. 2:17-CV-2683-EFB, 2019 WL 4670767, at *2 (E.D. Cal. Sept. 25, 2019).

**B.      Remand for Further Proceedings is Appropriate.**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  In the present case, the Plaintiff seeks only a "remand to the agency for additional investigation or explanation,'" *Simmons v. Colvin*, No. CV 12-06060-AJW, 2013 WL 3337666, at *3 (C.D. Cal. July 1, 2013) (quoting *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)).  (*See* Doc. 23 at 3).  Because the Court finds that further proceedings are necessary for further additional explanation, the Court remands this matter to the Commissioner for further administrative proceedings.  *See, e.g.*, *Simmons*, 2013 WL 3337666, at *3–4 (C.D. Cal. July 1, 2013) (finding error at step two and remanding for further administrative proceedings).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.        CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jaelyn Nicole Nichols and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 19, 2024**                    */s/ Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE